Roberta J. **ANDERSON**, Beltrami County, Respondents,

v.

**Verdell Charles BEAULIEU, Appellant.**

**No. C1–96–295.**

Court of Appeals of Minnesota.

Nov. 12, 1996.

Timothy R. Faver, Beltrami County Attorney, David P. Frank, Assistant County Attorney, Bemidji, for Respondent Beltrami County.

Roberta J. Anderson, Bemidji, Respondent pro se.

Shirley M. Cain, Cain Law Office, Bemidji, for Appellant.

Considered and decided by SCHUMACHER, P.J., and NORTON and HARTEN, JJ.

## OPINION

NORTON, Judge.

This appeal arises out of an action to adjudicate paternity and enforce child support obligations. Appellant, an enrolled member of the Red Lake Band of Chippewa Indians, brought a motion to dismiss, alleging lack of subject matter jurisdiction, because he currently resides and works on the reservation. The administrative law judge (ALJ) denied the motion to dismiss, concluding that appellant's employment on the reservation after commencement of the action was not relevant to the issue of jurisdiction. We affirm.

## FACTS

In 1993, respondent, Roberta J. Anderson (mother), gave birth to D.R.A. (child). Both mother and child are enrolled members of the Red Lake Band of Chippewa Indians and reside off the reservation. Mother and child received public assistance child support services, including Aid to Families with Dependent Children (AFDC), through respondent, Beltrami County. The county initiated this action to adjudicate paternity and enforce child support obligations. In the complaint, mother identified appellant, Charles Verdell Beaulieu, as the child's father. Beaulieu is an enrolled member of the Red Lake Band and resides on the reservation. At the time the county initiated this action, Beaulieu was employed off the reservation in Bemidji.

In September 1994, Beaulieu was personally served with the summons and complaint at his place of business. Beaulieu failed to an-

swer the complaint and the county moved for default judgment, again personally serving Beaulieu at his place of business. At the hearing on the default judgment, the county requested a continuance to give the parties time to complete blood tests. After several more continuances, Beaulieu brought a motion to dismiss for lack of subject matter jurisdiction. The ALJ denied the motion, specifically finding that mother and child resided off the reservation, and Beaulieu resided on the reservation but worked off the reservation.

Beaulieu brought a motion for "reconsideration" after he retained employment on the reservation. The ALJ amended the findings to reflect that Beaulieu worked off the reservation until at least July 11, 1995, but presently worked on the reservation. Based on this amended finding, the ALJ made the following conclusion of law:

> The fact that the Obligor at some time subsequent to the commencement of the action left his employment off of the reservation and is now employed on the reservation is not relevant to the jurisdictional issue herein since the Obligor was employed off the reservation and service of process was made off of the reservation at the time of the commencement of the paternity action herein.

The district court administrator entered an amended judgment and Beaulieu appeals.

### ISSUE

■ Is the state court deprived of subject matter jurisdiction over this action when, after commencement of this action, Beaulieu retained employment on the reservation?

### ANALYSIS

■ In contested administrative proceedings regarding child support orders, the decision and order of the ALJ is appealable to the court of appeals in the same manner as a decision of the district court. Minn.Stat. § 518.5511, subd. 4(h) (1994 & Supp.1995). An order denying a pretrial motion to dismiss for lack of jurisdiction is appealable as of right. *M.A. Mortenson Co. v. Minnesota Comm'r of Revenue,* 470 N.W.2d 126, 128 (Minn.App.1991). The court of appeals is not

bound by a district court's legal conclusions and will make its own determination on jurisdictional questions. *Becker County Welfare Dep't v. Bellcourt,* 453 N.W.2d 543, 544 (Minn.App.1990), *review denied* (Minn. May 23, 1990).

■ In cases involving assertion of a right by the state against a member of the Red Lake Band, the appropriate inquiry is whether the action of the state will undermine the tribe's right of self-government. *Red Lake Band of Chippewa Indians v. State,* 311 Minn. 241, 246, 248 N.W.2d 722, 726 (1976). The supreme court recognizes three principles of law with respect to the Red Lake Band:

> 1. The State of Minnesota has no authority to govern the affairs of persons *within* the territorial boundaries of the Red Lake reservation except as specifically authorized to do so by Congress.
>
> 2. The State of Minnesota does have authority to require that persons subject to the jurisdiction of the Red Lake Band submit to the governing authority of the State of Minnesota with respect to activities occurring within the territorial limits of Minnesota and *without* the territorial boundaries of the reservation.
>
> 3. Apart from the requirements of the Federal Constitution, the State of Minnesota, as a matter of state policy and with due regard for the unique status of the Red Lake Band of Chippewa Indians under the laws of the United States and of this state, should not, in the absence of some compelling state interest, impose burdens upon persons subject to the governing authority of the Red Lake Band when such burdens will undermine the effectiveness of the band's efforts to achieve effective self-government.

*Id.* at 247–48, 248 N.W.2d at 726–27.

Beaulieu argues that his residence and employment within the territorial boundaries of the Red Lake reservation deprives the state court of jurisdiction over this action. We disagree. In *Desjarlait v. Desjarlait,* 379 N.W.2d 139, 141 (Minn.App.1985), *review denied* (Minn. Jan. 31, 1986), the father appealed the district court's custody award, arguing

that the state courts lack jurisdiction to resolve child custody matters when the parties and their children are enrolled members of the Red Lake Band and have resided on the reservation. We held that the father voluntarily invoked the jurisdiction of the county court when he filed his petition for dissolution. *Id.* at 142. The rationale of *Desjarlait* applies to the present facts.

■ Although Beaulieu resided on the reservation at the time these proceedings commenced, he was employed off the reservation; by virtue of his employment off the reservation, Beaulieu voluntarily subjected himself to state jurisdiction. Additionally, Beaulieu voluntarily agreed to a paternity blood test thereby complying with state jurisdiction. Beaulieu remained employed off the reservation for nine months after receiving the summons and complaint. Severing his employment off the reservation nine months after commencement of the suit does not remove the state court's jurisdiction.

■ Second, Beaulieu contends that states cannot impose personal income taxes on reservation Indians with income derived wholly from reservation sources absent an express authorization from Congress. *McClanahan v. State Tax Comm'n of Arizona*, 411 U.S. 164, 179–81, 93 S.Ct. 1257, 1266–67, 36 L.Ed.2d 129 (1973). Reasoning by analogy, Beaulieu argues that a child support collection is similar to a tax "as it is collected for public purposes or to assist a greater group of people." We disagree. Beaulieu cites *State ex rel. Dep't of Human Servs. v. Whitebreast*, 409 N.W.2d 460, 464 (Iowa 1987), where the Iowa Supreme Court concluded that statutes permitting Iowa to seek reimbursement of assistance and future child support were regulatory and similar to a tax. We have specifically declined to adopt the *Whitebreast* court's reasoning, stating that "[w]hile chapter 256 of Minnesota Statutes regarding AFDC does contain some regulatory aspects, in a paternity action, the county is only acting on behalf of a private party who has assigned her rights to establish paternity and recover child support." *Bellcourt*, 453 N.W.2d at 544.

■ Finally, Beaulieu argues that if the state retains jurisdiction, the tribe's right to self-governance will be infringed. *Red Lake Band*, 311 Minn. at 248, 248 N.W.2d at 727. We disagree. The appropriate test to determine whether state court jurisdiction unduly infringes on self-governance of Indian tribes is "whether the state action infringed on the right of the reservation Indians to make their own laws and be ruled by them." *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959). The infringement test was designed to resolve the conflict that arises when both the state and the tribe fairly present a claim of jurisdiction. *Id.*

Beaulieu cites *Jackson County Child Support Enforcement Agency v. Swayney*, 319 N.C. 52, 352 S.E.2d 413 (1987), *cert. denied*, 484 U.S. 826, 108 S.Ct. 93, 98 L.Ed.2d 54 (1987), for the proposition that "a state cannot enforce child support laws on an Indian reservation." In *Swayney*, a county brought suit to adjudicate paternity, to collect a debt owed the state for past public assistance, and to obtain an order requiring the alleged father to make future child support payments. *Id.*, 352 S.E.2d at 414. The mother, child, and alleged father were all members of the Eastern Band of Cherokee Indians residing on the Indian reservation. *Id.* The district court granted the alleged father's motion to dismiss for lack of subject matter jurisdiction and the court of appeals affirmed. *Id.*

The North Carolina Supreme Court considered three criteria in determining whether the tribe's interest in self-governance was impinged: The parties' status as "Indian" or "non-Indian"; whether the cause of action arose on the reservation; and the relative interests of the parties. *Id.* at 418. First, the court concluded that plaintiff was a non-Indian and defendant was an Indian. *Id.* Second, the court concluded that the action arose on the reservation, because both the determination of parentage and the application for benefits occurred on the reservation. *Id.* Third, the court weighed the relative interests of the parties to the action by distinguishing between (1) the paternity adjudication, and (2) the debt collection and child support causes of action. *Id.* In the debt collection and child support action, the court

concluded that the tribe's interest in self-governance was not compromised as the state is required by the AFDC program to secure payments from persons legally liable for child support. *Id.* In the paternity adjudication, the court concluded the tribe's interest would be impinged as paternity of an Indian child is of special interest to tribal self-governance, when mother, child, and the alleged father all reside on the reservation. *Id.* at 419.

Applying the *Swayney* test to this case, it is clear that state court jurisdiction has not impinged on the tribe's self-governance. First, although mother and child and father are all members of the Red Lake Band, mother and child reside off the reservation. Second, the action arose off the reservation, because mother applied for AFDC through the county. An applicant for AFDC is considered to have assigned to the county all rights to child support from any other person. Minn.Stat. § 256.74, subd. 5 (1994); *Iverson v. Schulte,* 367 N.W.2d 570, 572 (Minn.App.1985). Finally, as was the case in *Swayney,* the tribe's interest is outweighed by the state interest in securing child support payments as required by the AFDC program. Allowing this action to proceed through state court will not infringe on the Red Lake Band's right to self-governance.

### DECISION

The ALJ properly determined that Beaulieu's present employment on the reservation did not deprive the state court of subject matter jurisdiction. Allowing the state court to retain jurisdiction over this matter does not infringe on the Red Lake Band's right to self-government. The ALJ properly denied Beaulieu's motion to dismiss for lack of subject matter jurisdiction.

**Affirmed.**