(945 P.2d 421)
No. 77,330

STATE OF KANSAS, *Appellee*, v. PRISCILA WAKOLE, *Appellant*.

Opinion filed September 26, 1997.

*Robert D. Campbell*, of Charles M. Tuley Law Office, P.A., of Atchison, for appellant.

No appearance by appellee.

Before GERNON, P.J., RULON and ROYSE, JJ.

GERNON, J.: Priscila Wakole appeals her conviction of driving with an illegal license tag in violation of K.S.A. 1995 Supp. 8-142. Wakole contends the conviction is improper because she was driving a vehicle with a valid license tag issued by the Sac and Fox Indian Nation.

On June 3, 1996, Priscila Wakole was driving her brother-in-law's van through Jackson County, Kansas. Wakole's brother-in-law, Steven Wakole, is a member of the Sac and Fox Indian Nation, and his vehicle was registered pursuant to Sac and Fox tribal laws.

Wakole was stopped by a Jackson County deputy sheriff because the officer believed the license tag issued by the Sac and Fox Nation was invalid. The deputy sheriff issued Wakole a ticket for an "illegal registration" in violation of 8-142.

At a hearing on July 15, 1996, the district court found Wakole guilty of the charged offense. The court noted that while the Sac and Fox tag may be recognized by the tribe on reservations, it was not aware of any "authority binding the State of Kansas to accept tags issued in the State of Oklahoma to tribal members on the Sac

and Fox reservation." Wakole was subsequently fined $30 and assessed $42 in court costs.

On appeal, the only issue to resolve is whether Kansas must recognize a valid license tag issued by the Sac and Fox Indian Nation and extend the privilege of using Kansas roads to vehicles so tagged without requiring registration of those vehicles upon entering Kansas.

K.S.A. 8-127 requires that every owner of a motor vehicle operated on any highways within Kansas, regardless of whether the owner is a resident of this state or another, to apply for and obtain registration in Kansas before such vehicle can be operated in Kansas. This statute is enforced under 8-142. However, Kansas also has a reciprocity statute which states:

"The provisions of this section shall apply only to the nonresident owner or owners of any motor vehicle constructed and operated primarily for the transportation of the driver or the driver and one or more nonpaying passengers. Such nonresident owners, when duly licensed in the state of residence, are hereby granted the privilege of operation of any such vehicle within this state to the extent that reciprocal privileges are granted to residents of this state by the state of residence of such nonresident owner." K.S.A. 8-138a.

Pursuant to K.S.A. 74-4305, a "state" is defined as

"a state, territory or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, a foreign country and a state or province of a foreign country and shall have the same meaning in other statutes of this state relating to interstate relations for licensing of vehicles."

Wakole maintains that the word "state" in 8-138a includes Indian nations. Wakole's contention raises a question of law involving the interpretation of a statute. "When determining a question of law, this court is not bound by the decision of the district court." *Memorial Hospital Ass'n, Inc. v. Knutson*, 239 Kan. 663, 668, 722 P.2d 1093 (1986).

In answering this question, it is helpful to look at how other jurisdictions have handled the issue. In *Queets Band of Indians v. State*, 102 Wash. 2d 1, 2, 682 P.2d 909 (1984), the Queets Band of the Quinault Indian Nation and the Muckleshoot Band of Indians adopted a tribal vehicle licensing and registration system. The Quinalts brought suit in federal court after a tribal garbage truck

was issued a citation by the Washington State Highway Patrol for not carrying a valid Washington registration and license tag. The Muckleshoots also filed suit after being informed by the State that it would not recognize their tribal license plates.

The district court found that each tribe was a "jurisdiction" within the meaning of Wash. Rev. Code § 46.85.020(2) (1987), which states: " '*Jurisdiction' means and includes a state, territory, or possession of the United States*, the District of Columbia, the Commonwealth of Puerto Rico, a foreign country, and a state or province of a foreign country." On appeal, the Ninth Circuit granted the State's motion to certify the question of the proper statutory interpretation to the Washington Supreme Court.

The Washington Supreme Court concluded that the legislature did not intend for tribes to be considered " 'territories or possessions of the United States.' " 102 Wash. 2d at 5. The court noted:

"While Indian Tribes do possess some powers and characteristics akin to those of states, territories, and possessions, they are truly sui generis. As we noted in *Anderson v. O'Brien*, 84 [Wash. 2d] 64, 67, 524 P.2d 390 (1974), 'Indian tribes are unique entities which do not fit into neat pigeonholes of the law.' If the Legislature had intended to include this unique group within the terms of the reciprocity statute, it would have done so expressly. The Legislature has regularly evidenced such an intent in other statutes by expressly referring to Indian tribes." 102 Wash. 2d at 4.

The Washington Supreme Court's decision brought into question the constitutionality of the legislation, which was subsequently addressed by the Ninth Circuit in *Queets Band of Indians v. State of Wash.*, 765 F.2d 1399 (9th Cir. 1985). The Ninth Circuit determined that the tribes in question possessed the inherent authority to register and license tribal vehicles. The court also found that both tribes had ordinances which on their face would have qualified them for reciprocity under state law except for the State's exclusion of the tribes as jurisdictions eligible for such treatment. 765 F.2d at 1405.

The Ninth Circuit reasoned that if the ordinances had been enacted by the federal government, they would preempt the state law. The circuit court noted, however, that the preemptive powers of the tribes were less evident. 765 F.2d at 1405-06. The court

examined the relevant state, federal, and tribal interests in order to determine whether the tribe's laws preempted the state statute pursuant to the Supremacy Clause. The Ninth Circuit concluded that the tribal ordinances were sufficiently preemptive to cause the State to recognize the tribal licensing and registration power based on its reciprocity provision. 765 F.2d at 1408-09. The court stated:

"[T]he tribes' exercise of sovereignty in licensing and registering their respective tribal vehicles carries with it sufficient 'preemptive' force to require that the state of Washington afford reciprocal recognition. 'The principle of tribal self-government, grounded in notions of inherent sovereignty and in congressional policies, seeks an accommodation between the interests of the Tribes and the Federal Government, on the one hand, and those of the State, on the other.' [Citation omitted.] We believe that we have reached the best accommodation between those interests." 765 F.2d at 1408.

This opinion was later vacated and withdrawn by the Ninth Circuit in anticipation of legislation that was intended to render the controversy moot. See *Queets Bank of Indians v. State of Wash.*, 783 F.2d 154 (9th Cir. 1986); see Wash. Rev. Code § 46.16.022 (1987). Despite this action by the court, we feel its reasoning still carries some persuasive value.

In *Red Lake Band of Chippewa Indians v. State*, 311 Minn. 241, 243, 248 N.W.2d 722 (1976), the Tribal Council of the Red Lake Band of Chippewa Indians enacted a motor vehicle registration and licensing ordinance. The Red Lake Band requested that the commissioner of public safety and the State of Minnesota recognize the validity of these registration and licensing procedures by extending reciprocity recognition to it under the reciprocity statute, Minn. Stat. § 168.187 subd. 1 (1974). The State refused and informed the band that members who drove on roads outside the reservation in vehicles without Minnesota vehicle registrations and plates would be subject to arrest. The Red Lake Band subsequently sought judicial relief.

The Minnesota Supreme Court found that the adoption of a motor vehicle registration ordinance by the Tribal Council of the Red Lake Band of Chippewa Indians was an appropriate exercise of its powers of self-government. 311 Minn. at 243. The court reasoned that the licenses issued by the Red Lake reservation would

be of little value to the registrants if the State of Minnesota refused to recognize their validity beyond the territorial limitations of the reservation. 311 Minn. at 249. The court noted that, as a practical matter, the ordinance would be nullified if almost everyone subject to its provisions were required to obtain a second license from the State of Minnesota. 311 Minn. at 249. The court held that the denial of reciprocity to the Red Lake Band which other jurisdictions are accorded "is an indirect interference with the internal government of the Red Lake Band not justified on the facts disclosed by the record before us." 311 Minn. at 251-52.

We conclude the rationale in *Queets* and *Red Lake* is persuasive and should be applied in the present case. Thus, the word "state" in K.S.A. 8-138a is interpreted to include Indian nations.

Because the Sac and Fox statute regarding vehicle registration extends reciprocal privileges to persons operating validly registered and tagged vehicles in Kansas, the State should grant the same privilege pursuant to its reciprocity statute. See Sac and Fox Tribe of Indians of Oklahoma Code of Laws, tit. 14, ch. 8, § 895. Accordingly, Wakole's conviction must be reversed.

Reversed.